UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA

VERSUS

TRAVIS TRUMANE BARLOW

CRIMINAL ACTION

NO. 13-44-BAJ-SCR

**RULING AND ORDER**

This matter is before the Court pursuant to a Motion to Suppress (doc. 10) and subsequent amendments to that Motion (docs. 11, 13) filed by Defendant Travis Trumane Barlow.  Defendant has filed his Motion on the grounds that firearm ammunition seized from a vehicle at or near 801 Swan Street on September 24, 2012, and DNA from a saliva sample taken on March 25, 2013 must be suppressed.  This Court held an evidentiary hearing on this matter on June 19, 2013.  Considering the evidence and arguments presented by both parties, the Court determines that the Motion must be denied for the following reasons.[1]

**BACKGROUND**

The Indictment charges Defendant Travis Trumane Barlow with one count of Possession of a Firearm by a Convicted Felon, in violation of Title 18 U.S.C. §

---

[1] The Court notes that Defendant originally filed his Motion on the grounds that the DNA from the saliva sample and any property, tangible or otherwise, seized from the 1770 Stanocola Street, Baton Rouge, Louisiana residence on March 25, 2013 and from the vehicle at or near 801 Swan Street on September 24, 2012, must be suppressed.  Defendant withdrew his challenge to the search of the residence at the hearing because Defendant was not charged on any matter related to that search.

922(a)(1) and one count of Possession of Ammunition in violation of Title 18 U.S.C. § 922(g)(1) (doc. 1).

On September 24, 2012, at approximately 11:00 AM, the Baton Rouge Police Department received a 911 call from a person located at 801 Swan Street alleging that Defendant was seen in the apartment complex's parking lot threatening another individual with a gun (doc. 12, at 2). Upon the officers' arrival at 801 Swan Street, Defendant fled. During the ensuing investigation, officers learned that Defendant and another male had arrived at the location in a black Chrysler 300 sedan. Officers also learned that Defendant hid the gun in a red Chevy Malibu automobile located nearby. Officers obtained consent to search the Chevy from the car's owner. The search revealed the presence of a Ruger, Model P89, .9mm pistol in the trunk (*Id.*).

Officers eventually located and arrested Defendant and the other male.[2] After each suspect was advised of his rights, Defendant stated that his mother rented the Chrysler and that he borrowed the vehicle from her (doc. 12, at 2). The officers obtained Defendant's name, date of birth, and other identifying information. After conducting a background check, the government alleges that the officers learned that Defendant was the subject of an active warrant for unrelated charges, that he was a convicted felon, and that his prior conviction

---

[2] The other arrestee is not charged in this case.

was for drug charges. According to the officers, the Defendant also advised the officers that he was on parole until later in the year.

Officers subsequently interviewed more witnesses at the scene. According to the government, the witnesses identified the Chrysler as having been driven by Defendant. The officers approached the vehicle and, according to the government, the officers looked through the passenger-side window and, in plain view, observed a firearm magazine inside. The officers searched the vehicle, and seized the firearm magazine (doc. 12, at 2).

On March 21, 2013, a federal grand jury returned an Indictment for the crimes charged. The officers arrested Defendant at 1770 Stanocola Street, Baton Rouge, Louisiana on March 25, 2013, pursuant to an arrest warrant (doc. 10-1, at 1). According to the officers, Defendant possessed marijuana and a sum of money indicative of drug trafficking at the time of his arrest. Also on March 25, 2013, subsequent to Defendant's arrest, officers obtained a search warrant for Defendant's DNA. On that same day, a saliva sample was taken from Defendant.

The affidavit in support of the warrant for DNA stated "affiant needs to collect an oral DNA/saliva sample from Travis Barlow, for purpose of the Louisiana State Police Crime Lab comparing to possible DNA profiles obtained from the handgun located from inside the Chevy (doc. 13, ¶ A2-II)."

An evidentiary hearing on this matter was held on June 19, 2013. The government presented one witness: Corporal Douglas Atkins (Corporal Atkins), a

3

member of the Baton Rouge City Police Department. Corporal Atkins was a member of the police unit that arrived on the scene at 1770 Stanocola Street, Baton Rouge Louisiana on September 24, 2012. Defendant's mother, Cassandra Barlow testified for the defense.

## ANALYSIS

### I.   STANDARD OF REVIEW

The proponent of a motion to suppress has the burden of establishing that his Fourth Amendment rights were violated by the challenged search or seizure. See *Rakas v. Illinois*, 439 U.S. 128, 132 (1978).

The defendant bears the burden of proving, by a preponderance of the evidence, that the evidence at issue was obtained in violation of his constitutional rights. *See United States v. Guerrero–Barajas,* 240 F.3d 428, 432 (5th Cir. 2001), *cert. denied,* 534 U.S. 1113, 122 S. Ct. 919, 151 L.Ed.2d 884 (2002). The burden of proof shifts to the government, however, when the search at issue was conducted without a warrant. *Id.* Therefore, with respect to the motions to suppress evidence seized from the vehicle, the government bears the burden of proving, by a preponderance of the evidence, that the search was constitutional. *Id.*

Here, in his Motion to Suppress, Defendant moves to suppress: (1) the DNA from the saliva sample taken on March 25, 2013; and (2) the ammunition seized from a vehicle on September 24, 2012.

## A.  STANDING

The government argues that Defendant's Motion must be denied because Defendant lacks standing to bring the Motion to Suppress on certain grounds. Specifically, the government avers that Defendant lacks standing to challenge the seizure of the pistol magazine seized from the Chrysler on September 24, 2012.  While not briefed by Defendant, at the hearing he argued that he has standing to challenge the search of the rental car despite not being an authorized driver on the rental agreement.  The Court finds that Defendant does not have standing because he did not have a legitimate expectation of privacy with regard to the rental car.

The Supreme Court has held that Fourth Amendment rights are violated only when the challenged conduct invades one's legitimate expectation of privacy, not that of a third party.  *United States v. Payner*, 447 U.S. 727, 731 (1980).  Only citizens with authority to control a rental car pursuant to the rental agreement have a legitimate expectation of privacy with the rental car. *See United States v. Boruff*, 909 F.2d 111 (5th Cir. 1990).

Further, the Fourth Amendment does not protect merely subjective expectations of privacy, only those "expectation[s] that society is prepared to recognize as 'reasonable.'"  *Katz v. United States,* 389 U.S. 347, 361, 88 S.Ct. 507, 516, 19 L.Ed.2d 576 (1967).

Here, both parties concede that Defendant was not an authorized driver of the Chrysler rental car.  The government asserts, and the Court agrees, that

5

Defendant did not have authority to control the rental car and thus had no legitimate privacy interest in the car.

At the hearing for this matter, Defendant principally argued that Defendant's mother, Cassandra Barlow (Ms. Barlow) may have had an on-going informal arrangement with the rental car company. This alleged arrangement allowed her son, although an unauthorized driver, to nevertheless drive the vehicle on prior occasions. The Court is not persuaded by Defendant's line of reasoning.

First, Ms. Barlow testified to signing the agreement, which indicated that she is the only authorized driver on the rental contract. She presented no record of any prior arrangements or conversations with the rental car company other than her own testimony. There was no documented evidence presented of any arrangement, informal or otherwise, with the rental car company or Ms. Barlow's insurance company through which the vehicle procured. There was no testimony that Defendant was even present when Ms. Barlow rented the vehicle. The Court finds that there was no evidence that Defendant had any joint ownership over the vehicle.

Second, any alleged arrangement on prior occasions does not demonstrate that Defendant had a legitimate privacy interest with regard to the vehicle. The Supreme Court has held that a mere subjective expectation of privacy is not necessarily reasonable. *Katz,* 389 U.S. at 361. Here, the mere fact that Defendant may have had his mother's permission to drive the car on prior

occasions does not change the fact that he was not an authorized driver under the terms of the rental contract.

Accordingly, because Defendant does not demonstrate a legitimate expectation of privacy with regard to the rental car, he lacks standing to challenge the search of that vehicle.

In the interest of clarity and thoroughness, the Court proceeds to examine whether the officers, nevertheless, had authority to seize the pistol magazine pursuant to the plain view doctrine.

### B. PLAIN VIEW

The Court next addresses the government's argument that Defendant's Motion must be denied because the evidence seized was found in plain view, thereby obviating the need for a warrant. *See United States v. Waldrop*, 404 F.3d 365 (5th Cir. 2005) (citing *United States v. Munoz*, 150 F.3d 401, 411 (5th Cir. 1998)).

The plain view doctrine is an exception to the warrant requirement which allows an officer to seize items when: (1) the officer is in a lawful position when he views the item; (2) the item's incriminating character is immediately apparent; and (3) the officers have a lawful right of access to it. *Horton v. California*, 496 U.S. 128, 136-137 (1990); *See United States v. Waldrop*, 404 F.3d 365 (5th Cir. 2005) (citing *United States v. Munoz*, 150 F.3d 401, 411 (5th Cir. 1998)).

Here, the officers were in a lawful position to view the incriminating evidence in the vehicle. Officers located the vehicle in a public parking lot and

viewed the pistol magazine (ammunition) through the vehicle's window while standing next to the vehicle (doc. 16, at 4).[3] Defendant's principal argument at the hearing was that the officer did not know that Defendant was a felon at the time of the search; and thus, had no reason to believe that having the pistol magazine in the vehicle was a crime.

As the Court appreciates the sequence of events outlined by Corporal Atkins' testimony, the officers knew that Defendant was a felon prior to locating the Chrysler. At the hearing, Corporal Atkins testified that the officers obtained the suspect's name, date of birth, and other identifying information. Atkins further testified that after conducting a background check, the officers learned that Defendant had an active warrant for unrelated charges, that he was a convicted felon, and that his prior conviction was for drug charges. Additionally, Defendant advised the officers that he was on parole until later in the year.

It is clear to the Court that the officers knew Defendant was a felon prior to the seizure of the pistol magazine. The officers also knew that Defendant arrived in a vehicle that matched the Chrysler's description and identified the pistol magazine as firearm ammunition. Therefore, the incriminating nature of the ammunition was immediately apparent, and the officers lawfully seized the pistol magazine pursuant to the plain view doctrine.

---

[3] The Court further notes that the officers had previously seized the Ruger, Model P89, .9 mm pistol from the trunk of a nearby vehicle (Chevy) prior to locating the pistol magazine in the Chrysler. According to the government, the pistol magazine in the Chrysler "fit" the Ruger 9 mm pistol (U.S. Ex. 4).

### C. WARRANT FOR THE DNA SAMPLE

Defendant also asserts that the warrant issued on March 25, 2013 for the collection of Defendant's saliva violated his Fourth Amendment rights. To establish whether the search warrant was valid, the Court must determine whether it was supported by probable cause.

#### 1. Probable Cause

The Fourth Amendment provides, "no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." Probable cause exists when the facts and circumstances described in the search warrant application lead a person of reasonable caution to believe that a specifically described item subject to seizure will be found in the place to be searched. *See Brinegar v. United States,* 338 U.S. 160, 175–76 (1949). In order to issue a search warrant, a magistrate must determine that probable cause exists based on the totality of the circumstances. *See Bennett v. City of Grand Prairie,* 883 F.2d 400, 404 (5th Cir. 1989).

The Supreme Court has recognized that "the Fourth Amendment does not require that the warrant set forth the magistrate's basis for finding probable cause, even though probable cause is the quintessential 'precondition to the valid exercise of executive power.'" *United States v. Grubbs*, 547 U.S. 90, 98, 126 S. Ct. 1494, 1501, 164 L.Ed.2d 195 (2006). Courts are required to assess the validity of a warrant based on the information that the officers disclosed, or had a

9

duty to discover and to disclose, to the issuing judge. *Maryland v. Garrison,* 480 U.S. 79, 85, 107 S. Ct. 1013, 94 L.Ed.2d 72 (1987).

In Defendant's brief and in the hearing on this matter, Defendant challenged the March 25, 2013 warrant for the DNA sample on the grounds that the evidence relied upon for the warrant describes a "possible" DNA profile (doc. 13 ¶ A2-II). He argues that because the affidavit supporting the warrant stated that there was a "possible" DNA profile, there must have been nothing to compare Defendant's saliva/DNA with at the time the warrant was issued. Defendant argues that, for this reason, the affidavit in support of the warrant lacked probable cause and the warrant was not properly issued.

In order to determine whether probable cause existed based on the totality of the circumstances, the Court must look to the information supplied in the affidavit.

### 2. Supporting Affidavit

It is axiomatic that an affidavit supporting a search warrant enjoys a presumption of validity. *Franks v. Delaware,* 438 U.S. 154, 171, 98 S. Ct. 2674, 2684, 57 L.Ed.2d 667 (1978). To defeat this presumption, a defendant must show that: "(1) allegations in a supporting affidavit were deliberate falsehoods or made with a reckless disregard for the truth; and (2) the remaining portion of the affidavit is not sufficient to support a finding of probable cause." *United States v. Brown,* 298 F.3d 392, 395 (5th Cir. 2002).

Here, the Court finds that there was no evidence presented at the hearing to suggest that allegations in the supporting affidavit were deliberate falsehoods.[4] Further, at the evidentiary hearing for this matter, the government refuted Defendant's argument that the police did not have a DNA profile prior to the application for the warrant. The government asserted that police had a DNA profile prior to applying for the warrant, but the application was merely poorly drafted by using the words "possible DNA profile."

Thus, the final threshold issue is whether the affidavit, when viewed in its entirety, is sufficient to support a finding of probable cause. The Court finds that the affidavit, although poorly drafted, does support a finding of probable cause under the totality of the circumstances. The Court reaches this conclusion for the following reasons.

First, the Supreme Court has recognized that an affidavit supporting a warrant does not need to be drafted with elaborate specificity. As the Supreme Court discussed in *Illinois v. Gates*, affidavits "are normally drafted by nonlawyers in the midst and haste of a criminal investigation." 462 U.S. 213, 235, 103 S. Ct. 2317, 2330-31, 76 L. Ed. 2d 527 (1983). The Court further discussed that the "technical requirements of elaborate specificity" are not required. *Id.*

Additionally, the Supreme Court recognized that search and arrest warrants "long have been issued by persons who are neither lawyers nor judges, and who certainly do not remain abreast of each judicial refinement of the nature

---

[4] No evidence supported the assertion that false allegations were made to the commissioner.

of 'probable cause.'" *Id.* (citing *Shadwick v. City of Tampa,* 407 U.S. 345, 348-350, 92 S. Ct. 2119, 2121-2122, 32 L.Ed.2d 783 (1972)).

Here, the Court declines to scrutinize the commissioner's determination that probable cause existed because one word was improperly used.  At the hearing, the government asserted that police had a DNA profile prior to applying for the warrant, but that the application was merely poorly drafted by using the words "possible DNA profile."  A magistrate's determination of probable cause should be paid great deference by reviewing courts, and this Court is loath to question the commissioner's finding by interpreting the warrant in a hyper-technical manner.

Second, a close reading of the affidavit demonstrates that there was probable cause under the totality of the circumstances.  While Defendant insists that the term "possible" is relevant to the analysis, the remaining portion of the affidavit suggests that there was a profile to compare to the sample. U.S. government Exhibit 4 states the following:

> "Affiant needs to collect an oral DNA/saliva sample from Travis Barlow, for the purpose of the Louisiana State Police Crime Lab comparing to a possible DNA profile(s) *obtained from the handgun* collected from inside the red Chevy Malibu." (Emphasis added.)

The words in the affidavit stating "obtained from," suggest that police did indeed have a DNA profile to compare to the sample when the affidavit was submitted in support of the warrant application.

Additionally, according to the facts produced at the hearing, the firearm and ammunition found on September 24, 2012 were swabbed for DNA after they were seized and before the warrant was issued.  When evaluating the facts available to the officer and the commissioner at the time the officer submitted the warrant application on March 25, 2013, probable cause existed under a totality of the circumstances.

Accordingly, because the Court finds that the affidavit is sufficient to support a finding of probable cause, Defendant's Motion to Suppress the DNA evidence must be denied.

### D.  THE COURT'S FINDINGS

Accordingly, the Court concludes that because Defendant lacks standing to challenge the seizure of the pistol magazine taken from the Chrysler on September 24, 2012, his Motion must be dismissed.

The Court further finds that because the incriminating nature of the ammunition was immediately apparent, and the officers lawfully seized the pistol magazine pursuant to the plain view doctrine, Defendant's Motion would nonetheless be dismissed.

Finally, the Court finds that the affidavit for the warrant was sufficient to support a finding of probable cause under the totality of the circumstances.  As such, Defendant's Motion must also be dismissed.

## CONCLUSION

For the foregoing reasons, Defendant's Motion to Suppress: (1) the DNA from the saliva sample taken on March 25, 2013; and (2) the ammunition seized on September 24, 2012 (docs. 10, 11, 13) is **DENIED** for the reasons set forth in this ruling.

Baton Rouge, Louisiana, July 16, 2013.

_____
BRIAN A. JACKSON, CHIEF JUDGE
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA